Next case for argument is Reed v. Colvin, Mr. Forbes. May it please the court, my name is Randall Forbes, I represent the claimant Polly Reed v. Colvin. In a real sense this case is similar to two cases that were ruled on after briefing. Those cases I will cite if you allow me, but they're not in a brief, but I don't want to violate the rule. Hill v. Colvin, which was the beginning of the establishment of the work history doctrine in this circuit, and then Stark v. Colvin, which is very similar to this case, work history and daily activities issues, and that was sent back also. This very difficult work, almost all of it medium, on her feet. I tried to calculate how many thousands... So is she back on a motorcycle now? I know that there was evidence that she rode a motorcycle, I do not know whether she is driving one. Well no, she was a passenger in the accident. So is her husband still riding his motorcycle? I don't know what her husband's motorcycle activities are, I know that he's an amputee now because of that accident. He's what? An amputee, he lost his leg in that accident. A foot was it, or an entire leg? I don't know the answer to that. So it's unlikely that he's still driving a motorcycle? Probably not. But there's no evidence whether she still is a motorcycle passenger or... That I don't know, Your Honor. Mr. Forbes, if I understand the record here, in November 2010, about five months after the accident, Dr. Wright, the plaintiff's lawyer, cleared her to return to work. My question is, has any doctor disagreed with that view since then? I don't know if there's been a specific disagreement, although there have been specific documentation of symptoms... I know she has continued to seek treatment, there are issues. But has any doctor made findings disagreeing with Dr. Wright's conclusion on that point? I don't believe so. Thank you. But the main point is, I'm not sure exactly what was in the is one at age 50, which she turned during the pendency of this action, if she cannot do stand-up work, light work. And looking at the case as an entirety, I think that's pretty clear that she or carry at the light level, or even to stand for periods of time. The rest breaks that she needs to get through her levels of activity would disqualify her from work. And there's plenty of evidence in the record that activity increases pain. So you have a hard-working woman, 26 years of very difficult and arduous work, and objective impairment. I mean, she had a career-ending injury, broke her leg, carried a cane, doctors observed the cane, never told her to stop using it. That's part of the context of the credibility analysis. So the next question is, do you believe what she says? And I understand that the ALJ is the primary determiner of credibility, but they have standards that they got to work with. One is, they've got to give some weight to the work history, if it's a real and meaningful work history, and it was here. And the second is that they can't over-emphasize daily activities in order to diminish credibility, unless there's some really good reasons to do that. And here, there are none. I mean, she's very frank in her testimony about what she can do. And she's also very frank as to the kind of rest that she needs and the kind of pain she experiences. If the pain medicine reduces her level of her pain from 4 or 5 to 1 out of 10, why wouldn't that enable her to work? Well, if it's narcotic pain medicine, then the next question would be, how does it affect her? And what's the cost of getting her down to 1? Does the record explain what kind of pain medicine for trauma is? I don't know that answer. You're right off the top of my head. I said, I don't know that answer right off the top of my head. Well, isn't that important? If she has to take a narcotic, an opioid or something to get the pain down, that's one thing. If she's taking some non-narcotic pain medicine, that's something else. Or even codeine. So codeine is a narcotic and now it's a prescription drug. But I don't think it's dangerous, is it? I guess it depends on the person. Can't people take codeine and work? Some people react to different drugs differently. Is there any evidence that she can take codeine? At the hearing time, her medication regimen was narco and prednisone. Prednisone would have dealt with swelling issues. Narco would have dealt with the higher level pain issues. And again, she went to the case as of age 50. So what do we know about narco? Is that a dangerous painkiller that you shouldn't take frequently or what? I've never heard of it. I can talk off the top of my head. I think narco is a brand name for a form of hydrocodone or acetaminophen. But I will need to check that. So when it boils down to whether or not her daily activities testimony is accepted, and there's no indication of exaggeration, I mean she testified as to what she did. It doesn't appear that she's really holding back here. So you've got to take the person as a whole. And when you look at this person as a whole, and look at the kind of work effort that she gave, you know when she says she can't work because her leg and hips and her ankle and her feet hurt, there ought to be a darn good reason to disbelieve her. And there's not a darn good reason in this case. And in fact, at 387, when her doctor's examining her, the pain issues are all back. And that is September 2012. So those are some important things. There's another important thing about this case, though, and that is that she did have some cervical spine impairments, degenerative disc disease with some radiculopathy. And her doctor at record 387 mentioned that she was limited in extension and rotation. Those limitations are not in the RFC. And it's not unusual for a person to have to move their neck from side to side, or to look down when doing light work. So I'll reserve the rest of my time for rebuttal, Your Honor, if there are no more questions. Thank you, Mr. Forbes. Ms. Cohn? May it please the Court. My name is Emily Cohn on behalf of the Commissioner in this case. Your Honors, this is a case in which the Administrative Law Judge thoroughly considered Ms. Reed's own statements, considered the statements from her husband, considered her testimony at the hearing, and went through all of the objective medical evidence, including the opinion evidence in the record. And all of those supported her conclusion that Ms. Reed was capable of a limited range of light work. The ALJ acknowledged all of Ms. Reed's testimony about her activities of daily living. In fact, there are five to six pages devoted just to that. And in the ALJ's decision, she specifically acknowledges all the rest breaks that she must take, the frequency at which she dusts and which she vacuums. The ALJ does not skirt those limitations. She also does not hold that against Ms. Reed. The ALJ does not say that because she can vacuum a room or dust or prepare a meal, that she would be able to do work. It is important to note that Ms. Reed did testify that she does continue to ride a motorcycle as a passenger. What about the question of her pain medicine? So does she take pain medicine continuously? Your Honor, at the time of the hearing, she testified that she was on prednisone. She had received a prescription for Norco about a month prior to the hearing. There is no testimony specifically that I found about the frequency of the pain medication, but at the time of the hearing, she was taking those medications. Did she say or did her lawyer say that if she worked, she'd have to take more pain medicine? I don't believe she did, Your Honor. She said that the pain medication was effective, and when she was asked about side effects, she did note dry mouth from the prednisone, but did not note any other side effects. Just dry mouth from prednisone? Correct, Your Honor. It is also important to note that the ALJ looked at all the opinions in the record. Only 20 weeks after the initial injury, her orthopedic surgeon, Dr. Wright, opined that she could return to work with regular duties. Other than that, the only other opinions in the record come from the state agency reviewing physicians, and the ALJ accepted and adopted those limitations. They had the benefit of not only the evidence up until Dr. Wright's opinion in November of 2010, all the way through until they gave their opinion in June of 2010. The objective evidence shows that Ms. Reed continued to have a normal gait without the use of a cane. It was noted in April of 2011 that she had an abnormal gait, however, by June of 2011, July of 2011, and August of 2012, Ms. Reed was walking normally without the use of a cane. And in fact, the ALJ did acknowledge her cane use, but determined that even one of the jobs cited by the VE at that time would accommodate the use of a cane. If Your Honors have no further questions, then the Commission will rest on a brief. Thank you, Ms. Scull. So, Mr. Forbes, do you have anything further? Yes, Your Honor. Yeah, I was correct. Norco is hydrocodone acetaminophen. I'm sorry. I said I was correct. Norco is hydrocodone acetaminophen. You had asked me that a little bit ago. In a previous argument, one of the judges said if you're trying to evaluate credibility, you've got to look at the realities they're facing. Well, one reality is that she has a husband who is missing a leg, so she probably has to do more housework than she wants to. Is he getting disability? I don't know that answer. I believe that he's still trying to work, but I would not want to say that without checking. Another comment was made, you know, is the activity making her worse off? Well, probably. Probably it is. But there's a lot here. The least that an ALJ can do for someone that has put in 26 years, and I ask you, just calculate 2,000 hours a year times 26 times all of that standing, and imagine what that really is. It's a big number. They ought to at least look at her work record, take it into account, and talk about it, and not say, oh, I don't believe you just because you need rest. This woman did need rest. That's what the Stark case is all about. This is almost exactly like the Stark case, Your Honors. Thank you. Well, thank you, Mr. Forbes and Ms. Combs.